## BESSON and others *vs.* EVELAND and others.

1. Where a husband uses the money of his wife in paying for land, the title to which he takes in his own name, a trust will arise in favor of the wife, which a court of equity will protect against the husband's creditors; but the design of the parties to create the trust must clearly appear, and the conduct of the wife be free from suspicion.

2. But where the husband has taken the title to property in his own name, with his wife's knowledge, and she has permitted him, for years, to represent the property to be his, and upon such apparent ownership, to obtain business credit and standing, equity will not protect the property from the husband's creditors, even if the design to create a trust in favor of the wife were clearly established by the evidence.

3. He who is silent when conscience requires him to speak, will not be permitted to speak when conscience requires him to be silent. And every transaction falls fairly within the operation of this maxim, where an innocent person, exercising reasonable prudence, has been misled to his injury, by false lights or appearances, held out with the consent or knowledge of the person subsequently alleging that the true state of affairs was totally different from what it seemed.

1. A claim of a trust, in favor of the wife, to property conveyed to the husband absolutely, should always be regarded with a watchful suspicion, and when attempted to be asserted against creditors, upon the evidence of the parties themselves, uncorroborated by other proof, it should be rejected at once, unless the statements are so full, clear, and convincing, as to make the fairness and justice of the claim manifest.

On bill, answer, and proofs.

*Mr. John C. Besson*, for complainants.

*Mr. S. B. Ransom*, for defendants.

THE VICE-CHANCELLOR.

Two of the defendants are husband and wife. The object of the bill is to subject certain lands, held by the wife, to the payment of a judgment recovered by the complainants against her husband. The lands consist of two tracts, situate at Bergen Point, in Hudson county, and were, at one time, owned by the husband, the first having been conveyed to him in May, 1867 ; and the second, in October, 1869. They were mortgaged in December, 1871, by the husband, to secure the payment of a bond, executed by him alone, to his wife's brother, for $5500. The husband continued to hold the title until March 19th, 1874, when he, together with his wife, made a conveyance to her brother, who held the $5500 mortgage, which was then surrendered for cancellation. The brother conveyed to the wife, March 31st, 1874. It is admitted, the object of the conveyance to the brother was, to put the title in the judgment debtor's wife. The brother swears, when he conveyed to the wife, he received $5500 in payment of his mortgage. This was at least $700 less than the amount due on the face of the papers. It does not appear whose money was used in making this payment. It is not shown the wife had any, except that alleged to have been used in the purchase of the lands. The sum was a large one, sufficiently so to be easily traced ; if it belonged to her, the fact should have been shown, and also how she obtained it, originally. The debt

the complainants are seeking to have charged upon the lands, was contracted in 1871 ; a suit was commenced for its recovery, April 18th, 1874, and judgment recovered on the 25th of the following June. It is admitted the judgment debtor was hopelessly insolvent when the conveyances were made.

Under this state of facts, it is perfectly clear the complainants are entitled to a decree nullifying the deeds as to them, and enforcing their judgments against the lands. No further proof of a fraudulent or dishonest purpose is necessary. Without further inquiry into causes or motives, the law justly declares a fraudulent design shall be imputed to such conduct by a debtor, until removed by clear and convincing evidence. The defendants have assumed that burden in this case. They attempt to show that these lands were paid for with the wife's money ; that the title was taken in the name of the husband, for their more convenient management, with an understanding between the husband and wife he was to hold them in trust for her until she required a conveyance made to herself, and that the conveyances in dispute were made in execution of this trust.

The wife has not attempted to maintain her claim by her own testimony; the case stands on the evidence of the husband alone. His story, substantially, is this : Some time prior to 1864, he purchased land at Hampton Junction, Hunterdon county, with his wife's money, derived from her father's estate, took title in his own name, held it for some years, then sold it for $2000 ; two or three years afterwards, took the $2000, with the interest accumulated on it, and some other of his wife's money, amounting together to $3000, and purchased the lands at Bergen Point. He further states, when he removed to Bergen Point he was worth, in his own right, about $3000, which was then invested in government bonds, and notes, and that he used his own money in establishing the business at that place. There is no evidence showing he was engaged in any business at Bergen Point, or elsewhere, requiring the outlay of capital, until January 1st, 1871 ; and

no reason is assigned for investing his wife's money, rather than his own, in the purchase of land.

It has been held, where a husband uses the money of his wife in paying for land, the title to which he takes in his own name, a trust will arise in favor of the wife, which a court of equity will protect against the husband's creditors. *Lathrop* v. *Gilbert*, 2 *Stockt.* 344. But, in the case just quoted, it appears it was the design of the parties to have the land conveyed to the husband in trust for the wife, and to have the trust expressed on the face of the deed. The scrivener who drew the deed, received instructions to draw it in that form, but from inadvertence or ignorance, failed to do so. It does not appear the wife knew the deed did not show her interest in the land, nor that it held her husband out as absolute owner of the property. Nor does it appear that the deed was re-corded.

In the case under consideration, both deeds, made to the husband, were recorded soon after their execution, and if the husband can be believed, his wife knew they were made to him, and that she was permitting him to hold himself out to the world, constantly, as the absolute owner of the lands, and to incur debts on the credit which such ownership gave him. It is clear, the debt the complainants are now seeking to recover was contracted, in part, at least, on the credit which the debtor obtained as the apparent owner of these lands. She knew he was engaged in a business necessarily attended with hazard, and in the prosecution of which he would incur debts. Having constantly consented he should hold himself out to the world as the owner of this property, and contract debts on the credit of it, up to the very hour of his disaster, it would be against the plainest principles of justice, and utterly subversive of every thing like fair dealing, to permit her to step in now and withdraw from the process of the law, put in motion by his creditors, the very property she had permitted him, year after year, to represent to be his, and the apparent ownership of which had given him his business credit and standing. Chief Justice Marshall, in *Sexton* v.

*Wheaton*, 8 *Wheat.* 229, says: "A wife, who is herself the instrument of deception, or who contributes to its success, by countenancing it, may, with justice, be charged with the consequences of her conduct." The rule thus stated, is simply a reasonable application of that great maxim of justice, which declares, that he who is silent when conscience requires him to speak, shall not be permitted to speak when conscience requires him to be silent. *Fonbl. Eq.* 163; 2 *Smith's Lead. Cases* 660; *Wendell* v. *Van Rensselaer*, 1 *Johns. Ch.* 353. It is most frequently invoked against persons, who, having a valid title to land, stand by knowingly, but passively, and permit some other person, also asserting a title to it, to make title to an innocent purchaser, without warning the purchaser of their rights; but every transaction falls fairly within its operation, where an innocent person, exercising reasonable prudence, has been misled to his injury, by false lights or appearances held out with the consent or knowledge of the person subsequently alleging that the true state of affairs was totally different from what it seemed.

On the question of fact, whether the money used in the purchase of the land was or was not the property of the wife, I think the defence is without substance or merit. Claims of this kind should always be regarded with a watchful suspicion, and when attempted to be asserted against creditors, upon the evidence of the parties themselves, uncorroborated by other proof, they should be rejected at once, unless their statements are so full, clear and convincing as to make the fairness and justice of the claim manifest. Any other course will encourage fraud and multiply the hazards of most business ventures. The evidence here does not approach this standard. As before stated, the defence rests on the testimony of the husband alone. His statements, in support of the main point, are of the most general and indefinite character. The only information he furnishes respecting the acquisition of a separate estate by his wife, is his statement, that the house and lot at Hampton Junction was paid for with his wife's money, derived from her father's estate; but how much

she obtained, whether $50 or $5000, when it was received, what use was made of it between the time it was paid and its investment by him in land in his own name, and who controlled, used and possessed it until invested in land, no information whatever is given.

Two letters were offered in evidence, written by the husband, to the counsel of complainants, after their claim was in his hands for collection, but before suit was brought, the first dated February 16th, 1874, and the second March 14th, 1874, in both of which the writer speaks of having had his title to the lands in controversy examined, for the purpose of procuring a loan, and in the last he says his title has been found all right, that there are two sources from which he is expecting a loan, one or the other of which will surely give him the money by the 1st of the following April. The representation of ownership of the lands, made in these letters, is in direct conflict with the claim he makes, under oath, in behalf of his wife. This contradiction impairs his credibility. He is not a trustworthy witness, and it may be added, his evidence is impeached by almost every fact connected with the title to and enjoyment of these lands.

The deed made to the wife's brother was executed in the presence of the solicitor, who drew the defendants' answers. It was executed by both husband and wife. The solicitor doubtless drew it. I cannot suppose the claim now set up was then disclosed. If it had been, I do not believe she would have been permitted to join in the execution of a conveyance of land, of which she was known to be the equitable owner.

The case, in its substantial features, is identical with that of *Clarke* v. *McGeihan*, 10 *C. E. Green* 423, and must be decided in the same way.

The evidence shows clearly, the conveyances sought to be avoided were made to defraud creditors. I shall, therefore, advise a decree nullifying them as to the complainants. The complainants are entitled to costs against the husband and wife.

The decree must be taken subject to the rights of Joseph A. Haynes, under the mortgage made to him July 1st, 1874, for $2000. Although it was executed and registered subsequent to the recovery of the complainants' judgment, it is not shown, or attempted to be, he is not a *bona fide* mortgagee for value, without notice.