City National Bank v. Hamilton.

---

THE CITY NATIONAL BANK OF PROVIDENCE, RHODE ISLAND,

*v.*

KATHARINE J. HAMILTON and EBEN G. HAMILTON.

1. A voluntary deed made by a grantor who is indebted at the time of its execution, is void as to creditors whose claims then exist. A conclusive presumption of fraud arises from the mere fact that debts exist and the deed is voluntary.

2. A voluntary deed may be void as to creditors whose claims are contracted subsequent to its execution. If the grantor of such a deed executes it in the expectation of shortly contracting debts, and with the design of so placing the property conveyed that if misfortune afterwards befalls him, and he becomes unable to pay his debts, it shall be beyond the reach of his creditors, the deed will be held void on the ground of fraud.

3. Where a husband purchases land with the separate estate of his wife, and takes title either in his own name, or in that of a third person, a trust results in favor of the wife, and equity will decree a conveyance to her.

4. If a wife permits her husband to take title to her lands, and to hold himself out to the world as the owner of them, and to contract debts upon the credit of such ownership, she cannot afterwards, by taking title to herself, withdraw them from the reach of his creditors, and thus defeat their claims.

On final hearing on bill and answer and proofs taken in open court.

*Mr. William R. Wilson* and *Mr. Frank Bergen,* for complainants.

*Mr. Robert Allen* for defendants.

VAN FLEET, V. C.

This is a creditor's suit. A part of the debt on which the judgment is founded was contracted February 25th, 1878. The balance was incurred subsequently. The conveyances, which the complainants seek to have declared fraudulent, appear to have been signed and delivered June 1st, 1877, but were not acknowledged or recorded until January, 1878. The lands the complainants are seeking to reach were conveyed to Eben G. Hamilton by deed dated January 24th, 1867, and he continued to hold the title to them until June 1st, 1877. The title on record stood in his name until January 8th, 1878. In the interval between 1867 and 1878, large expenditures were made upon the lands in the construction of buildings and in ornamentation. On the 1st of June, 1877, Mr. Hamilton conveyed the lands to one Ford, and he immediately conveyed them to Mrs. Hamilton. Just prior to the date of these deeds, Mr. Hamilton had agreed to form a copartnership with two other persons, to carry on a business in the prosecution of which it would be necessary to use capital and incur debts. The copartnership commenced business June 5th, 1877, and the judgment of the complainants is founded on debts contracted by the partnership in February and May, 1878. The complainants charge that the deeds by which title was conveyed to Mrs. Hamilton were voluntary, and were made by Mr. Hamilton in the expectation of incurring

debts, and with intent to so place his property, that in case the business in which he was about embarking should prove unsuccessful, his creditors could not reach it.

To this, the defendants answer that the lands in question were always, in fact and in equity, the property of Mrs. Hamilton, having been purchased by her and paid for with her money. They further say that the reason they were conveyed to Mr. Hamilton was because Mrs. Hamilton was advised that, inasmuch as she intended to have them extensively improved, under his superintendence, she could greatly facilitate him, and save herself much trouble and annoyance by permitting him to hold the title while the improvements were in progress.

A voluntary deed made by a grantor who is indebted at the time of its execution, is void as to creditors whose claims then exist. A conclusive presumption of fraud arises from the mere fact that debts exist and the deed is voluntary. But a voluntary deed may, likewise, be void as to creditors whose claims are contracted subsequent to its execution. If the grantor of such a deed executes it in the expectation of shortly contracting debts, and with the design of so placing the property conveyed that if misfortune afterwards befalls him, and he becomes unable to pay his debts, it shall be beyond the reach of his creditors, the deed will be held void on the ground of fraud. To illustrate: If a person, just on the eve of embarking in a business which requires both capital and credit to conduct it successfully, should, by a voluntary conveyance, strip himself of a large portion of his property, and make it over to his wife, or distribute it among his children, and then procure the conveyance to be withheld from record, so that he might still trade upon the property as its owner, and, in the interval, incur debts beyond his ability to pay, the transaction would furnish such cogent evidence of fraud against both grantor and grantee that no court would allow the deed to stand for an instant against the persons who had been defrauded by it. The law on this subject is established. A citation of authorities is only useful to show how the law has been applied in particular instances. *Cook* v. *Johnson, 1 Beas. 52 ;*

City National Bank v. Hamilton.

*Beeckman* v. *Montgomery, 1 McCart. 106 ; Belford* v. *Crane, 1 C. E. Gr. 265 ; Cramer* v. *Reford, 2 C. E. Gr. 367.*

From the rehearsal of the facts already given, it is obvious, in view of the doctrine just stated, that the complainants are entitled to the relief they ask, unless it has been satisfactorily proved that Mrs. Hamilton was in truth and in equity the owner of the property in controversy when the deeds now sought to be overthrown were made. If those deeds were simply made to invest her with the legal title to what she was before rightfully entitled in equity, their execution was neither a fraud nor a wrong. That appears to have been the fact, and it is established by the evidence so clearly as to be placed beyond all reasonable doubt. It is undisputed that prior to January 1st, 1866, Mrs. Hamilton held the title to two houses and lots in the city of Brooklyn. One she conveyed in February, 1866, for $7,250, and the other in April, 1866, for $15,000, making a total of $22,250. The property in controversy was bought in January, 1867, for less than $8,500. It thus appears she had abundant means. She swears that she used them in making the purchase, and afterwards in paying for the improvements. Nobody contradicts her. Her husband had not sufficient means to make the purchase. There can be no doubt, in view of the evidence, that the money received for the Brooklyn property was used to pay for the land in controversy. One of the persons of whom the purchase was made, says that a few days before the deed was executed he inquired of Mr. Hamilton to whom the deed should be made, and that he replied that his wife's money would be used to pay for the property, but inasmuch as she expected to be absent in Canada most of the time, and wanted to commence improving at once, it was perhaps best that it should be made to him. It had been previously arranged that Mr. Hamilton should superintend the improvements. So far as appears, there was no reason, at this time, why he should not speak the truth. Besides, the truth of his statement is strongly confirmed by the condition of the parties. His wife was a person of considerable means, and he had none, or very little. Mrs. Hamilton swears that the reason she consented that the deed should be made to her hus-

11

band was because she was told it would be easier for her to have it so; she would not then be required to sign contracts, and would thus be relieved from all trouble and annoyance incident to the improvements. She further says that it was understood between her husband and herself that when the improvements were completed he should make the title over to her. There can be no doubt that unless the great bulk of the evidence is discarded as untrustworthy, it must be considered as fully established that the lands in controversy were paid for with the money of Mrs. Hamilton, and consequently they were, in equity, her property. Where a husband purchases land with the separate estate of his wife, and takes title either in his own name, or in that of a third person, a trust results in favor of the wife, and equity will decree a conveyance to her. *Lathrop.v. Gilbert, 2 Stock. 344; 1 Lead. Cas. in Eq. 342.*

Nor do I think that it should be held that these lands are liable for the complainant's debt on the ground that Mrs. Hamilton has, either actively or passively, assisted her husband in perpetrating a fraud. It is undoubtedly true that a wife who is herself the instrument of deception, or who contributes to its success, by countenancing it, may, with justice, be charged with the consequences of her conduct. *Sexton v. Wheaton, 8 Wheat. 229; Besson v. Eveland, 11 C. E. Gr. 468.* If a wife permits her husband to take title to her lands, and to hold himself out to the world as the owner of them, and to contract debts upon the credit of such ownership, she cannot afterwards, by taking title to herself, withdraw them from the reach of his creditors, and thus defeat their claims.

In this case, the wife has permitted her husband to hold title to these lands for over ten years, but during that time no debts were contracted on the credit of his ownership. When her husband was about to embark in business, she requested that the title to them should be put in such form that no one could be deceived or misled. The deeds were not put on record at once, but this omission, I think, is satisfactorily explained. Her child was sick, and she was preparing to go to Canada. She says she was anxious about her child, and it was, therefore, quite natural

that she should have allowed those matters to absorb her whole attention. When she returned from Canada she found that the deeds had not been acknowledged, and could not, therefore, be recorded. She also found that the person who had acted as the medium of transfer to her was absent. As soon as he returned, his acknowledgment was procured and the deeds immediately recorded. No part of the complainant's debt was contracted until the deeds had been on record for more than a month. They did not give credit to the husband, because they believed him to be the owner of the lands in controversy, nor were they in any way misled or deceived by the state of the title.

But the decisive fact against the complainants, in my judgment, is, that the deed to Mrs. Hamilton is not a voluntary deed, but appears to be entrenched in the good faith by which an honest acquisition of property is always distinguished. She had a separate estate, abundantly sufficient to purchase the lands in controversy, and, under the evidence, it is incontrovertible that she paid for them with such estate. Under such circumstances, her title must be considered unimpeachable unless she has allowed the lands in question to be used as the means of deception. That is not shown.

Two or three admissions by Mr. Hamilton were proved, tending to show quite strongly that his object in transferring the property to his wife was to place it beyond the reach of his creditors, but they were made after title had vested in his wife, and are consequently without force against her. No admission or declaration made by a grantor after the conveyance of the estate is evidence against his grantee. *Beeckman* v. *Montgomery, 1 McCart. 106.* The bill of the complainants must be dismissed.