Clark Thread Co. *v.* William Clark Co.

THE CLARK THREAD COMPANY

*v.*

THE WILLIAM CLARK COMPANY.

1. In a suit against a corporation to enjoin its use of the trade-marks of the complainant and to obtain an accounting of profits, the fact that a previous suit had been brought by the same complainant against the selling agent of the defendants for the same purpose, and that there had been a decree for an injunction, but no decree for an accounting in that suit, does not estop the complainant from obtaining an accounting in the second suit, it appearing that the selling agent had been employed upon a salary and received no profits, and it appearing that upon that ground no decree for an accounting was made against him.

2. A decree for an accounting in a suit for the infringement of trade-marks can only be made where an injunction is or could have been granted in the course of the suit.

3. An injunction will be granted where it appears that, at the time the suit was begun, the defendant was infringing the right of the complainant to the exclusive use of trade-marks, although at the time of final hearing such practices had ceased, and although the defendant had promised a perpetual cessation of the infringement.

On final hearing.

*Messrs. Randolph, Condict & Black, Mr. Richard V. Linda-bury,* and *Mr. Charles D. Meyer* (of New York), for the complainant.

*Mr. Edward Q. Keasbey,* and *Mr. Henry D. Donnolly* (of New York), for the defendant.

REED, V. C.

This bill is filed to enjoin the defendant from using certain trade-marks which are alleged to be the property of the complainant, and also for an accounting for the profits diverted from the complainant to the defendant by reason of the previous illegal use by the defendant of such trade-marks.

Clark Thread Co. *v.* William Clark Co.

Both complainant and defendant are manufacturers of spool cotton thread. The complainant insists that long before the organization of the William Clark Company (the defendant), the Clark Thread Company (the complainant) had by use acquired an exclusive right to employ, in the sale of its goods, certain words and letters upon the labels upon its spools and boxes. It insists that the defendant has, by the use of the same or similar words and letters printed upon its labels upon its spools and boxes, infringed upon the property right of the complainant in its trade-marks.

The questions presented are, first, whether the Clark Thread Company had acquired an exclusive right to use a trade-mark; second, whether this right has been infringed by the defendant, and third, whether there should be an injunction against the further use of such trade-marks by the defendant, and for an accounting for profits arising from the illegal use by the defendant of such trade-marks.

An original examination of these questions in this case is excluded because of a previous adjudication made in the federal courts. This judgment is set up by both complainant and defendant as an estoppel against a relitigation of the points in issue, so far as the former decree circumscribed and defined the extent of the exclusive right of the complainant to use certain words and letters, and as an estoppel, so far as the judgment enjoined the use of these words and letters by the defendant. This previous adjudication is also set up by the defendant as a final determination against the right of the complainant to an account for profits in this case.

The points to be decided are resolved into an inquiry whether the decree in the former suit has put at rest all the questions raised by the pleadings in the present suit.

To understand the manner in which the suits are related, it is essential that the purposes of the first suit, the parties to it and the several decrees made in it shall be set out. It is equally essential that the pleadings in, and the progress of, the present suit, in relation to the former suit, shall also be exhibited.

The bill in the first suit was filed in the United States circuit

court for the southern district of New York, in January, 1893.
That suit was brought by the Clark Thread Company, the
present complainant, against one Herbert G. Armitage.  Armi-
tage had been and then was the general manager of the sales
department of the William Clark Company.  The William Clark
Company openly defended the suit against Armitage.  The bill
in that suit was filed upon the same facts as is the bill in the
present suit.  It specifically prayed for an injunction restrain-
ing the defendant from selling thread under the name or desig-
nation of " Clarks," or the " William Clark Company," or under
a designation of which the word ".Clark" or " Clarks" should
be a part, or from using, in connection with the thread, the col-
location of the three letters " N. E. W.," horizontally arranged
across a circular spool label or otherwise.  The bill also prayed
for an accounting for profits.

In May, 1895, a decree was made in that case by Judge
Coxe, in the district court.  By that decree the defendant was
restrained from using the word " Clark" or " Clarks" except
when those words occurred in the name of the corporation, viz.,
" The William Clark Co.," and when so used in good faith the
word " Clark" was not to be printed in Gothic type or other-
wise so as to be in violation of the injunction.  The decree was
silent as to the right of Armitage to use the letters " N. E. W.,"
the court refusing to restrain their use.

After this decree by Judge Coxe was made, the bill in the
present case was filed on July 17th, 1895, against the William
Clark Company, a New Jersey corporation.  This bill, as I
have already observed, is grounded upon the same facts as the
previous bill, and prays for the same relief against the William
Clark Company as the former bill had asked against Armitage.
To this bill an answer was filed by the William Clark Com-
pany on November 14th, 1895, in which answer it was set up
that the decree made by Judge Coxe in the former suit had
established the right of the defendant to use the corporate name
of the William Clark Company upon the thread sold by that
company.

On November 27th, 1895, the complainant filed a petition of

appeal from a part of the decree made in the circuit court of the United States to the United States court of appeals for the second circuit, and on the same day the defendant Armitage filed a similar petition, appealing from parts of the same decree. These appeals were decided on May 28th, 1896. The court of appeals affirmed the decree below in respect to its order restraining the defendant Armitage from using the word "Clark" or "Clarks," but the court also decreed that the defendant was not entitled to use the collated letters "N. E. W." upon its labels and circulars, and directed an injunction against Armitage accordingly. In the meantime, nothing had been done in the present suit subsequent to the filing of the answer.

After the adjudication in the court of appeals in the preceding suit, a supplemental bill was filed in this suit on August 1st, 1896. This bill set up the decree in the appellate court as conclusively determining between the parties in this suit the effect of and the extent of the infringement by the defendant of the trade-marks of the complainant. To this supplemental bill an answer was filed on March 3d, 1897. The answer admitted that the preceding decree was conclusive upon all matters litigated in that suit, and claimed that, inasmuch as the bill in the former case prayed for an accounting for profits, and as the decree in that case was silent upon that point, that the matter of accounting was thereby conclusively settled against the right of the defendant to an accounting, and so estopped the Clark Thread Company from now insisting upon a decree for an accounting.

It is therefore perceived that, by the pleadings in this suit, it is assumed and admitted by both parties that, in so far as the decree in the federal court fixes the right of the parties in relation to the use of the word "Clark" or "Clarks" and the use of the letters "N. E. W.," the judgment is to be regarded as a final determination.

The mooted point is whether the decree in the preceding case concludes the complainant from a decree for an accounting for profits in this case.

Assuming that the William Clark Company, by openly ap-

pearing and defending Armitage, its servant, for acts done within the line of his employment, are estopped from litigating anew any point in issue and decided in that cause (*Lyon* v. *Stanford, 15 Stew. Eq. 411, 414,* and cases cited), and assuming that, by the doctrine of mutuality of estoppels, the complainant was also concluded from again litigating in a suit against the master, any question so settled in a suit against the servant, the question remains, does the estoppel reach this matter of accounting?

The effect of an estoppel by judgment may present two aspects—one where a second suit between the same parties is brought for the same cause of action; the second where a second suit between the same parties is brought not for the same cause of action, but for a cause of action so related to the cause in the preceding suit, that some matter, the establishment of which is essential to the recovery by the complainant in the last suit was in issue and determined in the preceding suit.

In respect to the first phase in which the question of estoppel presents itself, it is entirely settled that after one judicial determination by a court of competent jurisdiction, a second suit for the same matter, between the same parties or their privies, cannot be relitigated in the same or any other court. Nor does it matter that, in the first suit, evidence existed which was withheld or undiscovered, or that the law was misconceived by the court, or left uncited by counsel, or that no defence was made and judgment went by default, or that only one of several defences was interposed by the defendant; in spite of any of these defects in the prosecution or defence of the action, the judgment stands as an absolute bar against a second litigation of the same cause of action.

When, however, a second suit is brought not for the same demand, but for a cause which was a part of the same matter, but was not included in the first action, the estoppel is not so sweeping. In such instance only those issues which are common to both suits, and which had to be or were actually decided in the first suit, are regarded as *res adjudicata* in the second. This distinction between the two kinds of estoppel is lucidly stated by Mr. Justice Field in *Cromwell* v. *Sac County, 94 U. S. 351.*

In that case there had been an action upon certain county bonds, in which action the county succeeded. In a subsequent action by substantially the same parties, upon other coupons on the same bonds, the previous judgment was set up as an estoppel. Mr. Justice Field, after speaking of the absolute estoppel as to every ground which might have been presented in the preceding case, when a second action is brought for the same cause, goes on to say : "When a second action is upon a different claim, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted upon the determination of which the finding of the verdict was rendered. In all cases, therefore, when it is sought to apply the estoppel of a judgment in one case to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been litigated or determined."

In accordance with this view, it had been held in *Steam Packet Company* v. *Sickles, 65 U. S. 333,* that where the record of the first suit does not show that the point involved was actually decided, parol evidence is admissible to show the state of affairs that existed at the trial, with a view to ascertain what was decided.

The point so decided, namely, that in the second class of estoppels it must appear that the point set up by way of estoppel was, or must have been, determined in the original suit, was reaffirmed in the case of *Wilson* v. *Deen, 121 U. S. 525;* was recognized in *Dooley* v. *Potter, 140 Mass. 49; Daggett* v. *Daggett, 143 Mass. 516; Kilander* v. *Hoover, 111 Ind. 10; People* v. *Hall, 104 N. Y. 170; Bigley* v. *Jones, 114 Pa. St. 510; Russell* v. *Place, 94 U. S. 606.*

The strictness with which this rule has been applied is illustrated in the case of *Burlen* v. *Shannon, 99 Mass. 200.*

This was an action brought to charge the defendant for board furnished by the plaintiff to defendant's wife. The defence set up was, first, that the defendant had been divorced by a decree of divorce granted by an Indiana court; second, that the wife had later, herself, sued for divorce on the ground of cruelty and

desertion, to which suit the husband had set up two defences—
first, a denial of the cruelty and desertion, and second, that he
had already obtained a divorce in Indiana, and that in the suit
of the wife against him the cause was dismissed.

The judgment in this case was relied upon in the subsequent
action for board as conclusively establishing the divorce, and so
operated as a complete defence to the action brought against him
for the wife's board. But the court held otherwise, because the
judgment which dismissed the wife's suit for divorce might
have gone upon either of two grounds, namely, that the hus-
band was not guilty of cruelty and desertion or that he had
been previously divorced. It not appearing, therefore, that the
question of divorce must have been the ground upon which the
case was decided, or was the ground upon which it was decided,
the court refused to recognize the judgment of dismissal as an
estoppel.

In the opinion in this case by Judge Foster, all the cases in
the Massachusetts court are collected in support of the doctrine
that it must appear that the point involved was necessary to
the judgment in the preceding cause, or was a fact in issue and
was decided. In the language of Mr. Smith, in his learned
note to the leading case of *Duchess of Kingston, 2 Sm. Lead.
Cas. marg. p. 590*:

"It is not necessary that the point on which it is sought to estop should
have been the only one in issue on the previous occasion; it is enough if it be
one which must have been decided."

The strictness in which this rule should logically be, and has
been, enforced is illustrated by that leading case itself. In that
case the house of lords had propounded to the judges the ques-
tion whether a sentence by a spiritual court against a marriage
in a suit for jacitation of marriage is conclusive evidence, so as
to estop the counsel of the crown from proving the marriage in
an indictment for polygamy. The answer of the judges was
that (apart from the fact that the parties in the two proceedings
were not the same) there was no estoppel because, in the eccle-
siastical court, the sentence had only a qualified effect, viz., that
the parties had failed in the proof, and that the libellant was free

from all matrimonial contract, so far as yet appears, leaving it open to new proof of marriage, so that the sentence only proved that it did not yet appear that they were married, and not that they were not married. "The sentence and this judgment," said Chief-Justice De Gray, "may stand well together and both propositions be true."

Now, the obvious rule controlling estoppels, as stated and illustrated by this case, is, in my judgment, applicable to the point involved in the present case. The test, as stated by Chief-Justice De Gray, is whether the decree in the former suit refusing an accounting, and a decree in this suit awarding an accounting, can stand together. The condition calling for the application of the rule, it is true, is in this case novel, but the applicability of the rule seems to be logically certain.

In the present case the estoppel against the master rests upon the identity of himself and his servant as defendants in the previous suit. It is apparent that if the identity of the two defendants in the two suits was not perfect in respect to their several responsibilities for the matters involved in the two suits, the causes of action would not be identical. The cause of action against the servant would not be the same cause of action for which the suit against the principal is prosecuted. As to those matters decided in the previous case, as to which there was perfect identification, *i. e.*, matters done by direction of the master, and which could not have been decided for or against the servant without deciding that the power of the master to so direct his servant was with or without legal warrant, there was a complete estoppel against the latter. In respect to such conduct of the agent, an adjudication that it was or was not legal was an adjudication that the direction of the master was or was not legal. If, however, the decision in favor of the agent had been put upon the ground that the agent had done none of the acts charged, while it would be conclusive in a subsequent suit against the principal for the result of any of those acts of that agent, it would clearly afford no immunity to the principal for any act done by another agent. So of any act of the agent aside from the scope of his agency, either by

Clark Thread Co. v. William Clark Co.

original authorization or subsequent ratification, it seems entirely clear that a judgment for or against the former could not affect the latter. There would be no identification of parties in regard to such matters, and so the latter suit would have been brought for a different cause—indeed, against different parties. For instance, if the former suit in the federal court could have been and had been brought for a simple accounting and had failed because the agent had not sold any goods, it would have settled nothing in a suit against the principal for goods sold by any other agent. So if, by the terms of the agency, there was no right of the agent to receive profits, or he had received none, it is equally apparent that a judgment on that ground in favor of the agent would decide nothing as to the principal who had actually received profits. Now, the latter condition of affairs seems to be the present posture of the litigation before me. In the former suit brought by this complainant against the selling agent of the present defendant, the selling of the goods by the servant was admitted, and it was conceded that the use of the labels by the servant was by direction of the master. The right of the agent depended upon the right of the master to use the interdicted labels. If the agent had no right, the master had none, and *vice versa*. The same evidence which supported or destroyed the right of one equally supported or refuted the right of the other. It was impossible to grant or refuse an injunction against the agent which did not rest upon the right of both master and servant to employ the questioned devices in the defendant's absence. Conceding, then, that the defendant company had so identified itself with the servant in the preceding suit, as to be bound by the decision of the court in regard to the right of the agent to use the labels, it is entirely clear that so far the issues in the two cases are precisely the same.

But when we leave the ground upon which the injunction went, and reach the matter of an accounting for profits, the two cases present quite different aspects. It is apparent at once that, assuming that both principal and agent were guilty of violating the property rights of the complainant by an illegal use of its trade-marks, nevertheless the question of the liability of each

Clark Thread Co. *v.* William Clark Co.

to account for profits must depend upon entirely different considerations. A decree for an accounting could go only if it appeared that there was something for which the defendant was liable to render an account. If the court is satisfied that nothing is due to the complainant from the defendant, no further proceedings will be permitted and the bill will be dismissed. *Campbell* v. *Campbell, 4 Halst. Ch. 738; Stout* v. *Seabrook's Executors, 3 Stew. Eq. 187.*

The same obvious course in refusing an accounting in a patent case was taken in *Bergmann* v. *Macmillan, 17 Ch. Div. 423,* Mr. Justice Fry saying that he could not direct an accounting for profits which were non-existent.

It is entirely clear from the record in the preceding case and the testimony in this, that this was the reason why the decree in the former case was silent upon the question of accounting. It appeared in the evidence of the preceding case, without contradiction, and was stated in the brief of counsel for the defendant in that case, that Armitage was an employe of the William Clark Company upon a stated salary, beyond which he received nothing. All the profits received from sales made through his agency went to the present defendant. If the agent received no profits, it did not follow that the principal received none. Therefore, the decree in the first case, based upon the fact that the agent had received no profits, could not conclude the complainant from an accounting against the principal for profits which it had received. The two decrees can stand together.

In my judgment there exists no estoppel against a decree in favor of the complainant for an accounting.

But the defendant interposed another objection against the award of an accounting for profits. This objection is based upon the insistence that a court of equity has no jurisdiction to entertain a suit *simpliciter* for an accounting for profits; that such an accounting can only be awarded as incidental to an injunction; that the complainant is not, in this suit, entitled to an injunction.

The first and second of these propositions are entirely settled. The only way a court of equity can acquire jurisdiction to order an accounting for profits in this class of suits is by obtaining

jurisdiction over some equitable matter with which the matter of accounting is so interwoven as to justify the court in settling all questions in one suit. The query remains, then, is the complainant entitled to an injunction?

At the date when this bill was filed, in July, 1895, it is entirely clear that the defendant was violating the right of the complainant by selling goods under labels having upon them the letters " N. E. W." It is undenied that this conduct continued until after the decree in the United States court of appeals, on May 28th, 1896. Since then the words and letters, the use of which was interdicted by that decree, have not been employed by the defendant. The defendant insists, for this reason, that no decree enjoining it from such infringement should now be assigned against it.

It may be remarked that the property right which a party has in a trade-mark is of the same quality as a copyright or the right to a patent, and the remedies accorded to the owner of either of these kinds of property are, except as they may be controlled by statutory regulations, analogous. The rule which prevails in the federal court in respect to the granting of an accounting in patent cases is that the right does not depend upon the question whether there is need for the injunction at the time of the hearing. The rule as stated in *Bragg Manufacturing Co.* v. *Hartford, 56 Fed. Rep. 292*, is this : " The test of jurisdiction [to decree an accounting] applied in the later cases is whether the bill is filed in season to enable the complainant, under the rules and practice of the court, to move for and obtain an injunction before the expiration of the patent." If so, although there may be nothing for the injunction to restrain at the time of the hearing (the patent having expired), yet, jurisdiction having existed, to grant an injunction upon the bill filed, the account will be decreed. *Singer Manufacturing Co.* v. *Wilson Sewing Machine Co., 38 Fed. Rep, 586.*

The condition of affairs which existed at the time of the filing of the bill and continued to exist thereafter for ten months, was such as to entitle the complainant to a preliminary injunction, and conceding that the defendant has ceased to infringe since

May 28th, 1896, that cessation will not defeat the complainant's right to a decree. Even if there is coupled with the fact of past cessation a promise of a perpetual discontinuance of the infringement, this will not defeat the injunction. Where, upon a bill to enjoin infringements of patent rights, the defendant admits the infringement and asserts that, after the bill was filed, he refrained from the use of the thing patented and asserts that he will not afterwards infringe, this is no reason why the injunction should not issue or be made perpetual. *Rumford Chemical Works* v. *Vice, 14 Blatchf. 179 ; Wollensak* v. *Reilrer, 28 Fed. Rep. 427 ; North American Iron Works* v. *Fiske, 30 Fed. Rep. 622 ; Celluloid Manufacturing Co.* v. *Arlington Manufacturing Co., 34 Fed. Rep. 324 ; Facer* v. *Midvale Steel Works Co., 38 Fed. Rep. 231 ; 1 Spell. Ex. Relief ¶ 829,* and other cases there cited.

The principle upon which the injunction goes is that the defendant was a wrongdoer when the bill was filed, and having been a wrongdoer once, he may be so again, in spite of his asseveration that he will not repeat the infringement; and further, that if the defendant intends in good faith to keep his promise, the injunction will not harm him, otherwise it will be a security for the plaintiff that his right will not be again invaded. Although these cases were those where the bill was filed to enjoin the infringement of patent rights, yet, as already observed, they stand upon the same principle as bills to restrain infringement of copyrights or trade-marks. The rule controlling the allowance of a final injunction in respect to one of these rights logically applies to cases of violation of all.

Mr. Kerr lays it down as the rule in regard to bills to restrain the violation of trade-marks, that the owner of a trade-mark, where the mark has been illegally taken by another, is not bound to rely upon his assurance or promises not to repeat the illegal appropriation of the mark, but is entitled to the protection of the court by injunction. *Kerr Inj. 422 ; Millington* v. *Fox, 3 Myl. & C. 338 ; Edelsten* v. *Edelsten, 1 De G., J. & S. 185 ; Geary* v. *Norten, 1 De G. & S. 11.*

I will advise a decree enjoining the defendants and for an accounting for profits, in accordance with the prayer of the bill.