The bill in this cause is filed to set aside two conveyances as against the judgment of the complainant, one made by Philip Oneto and wife to Mary Dillon, dated and recorded September 12th, 1922, and the other made by Mary Dillon, *Page 76 
single, to Josephine Oneto, the wife of Philip, bearing date and recorded on the same day as the prior deed.
The premises in question were acquired by Philip Oneto, the husband of Josephine, from one Oscar Pflug, on May 2d 1910. He retained title until the two conveyances above mentioned, which vested the title in his wife, Josephine Oneto, were made.
The complainant, on September 25th, 1913, loaned to the defendant Philip Oneto, $600, and took his promissory note for that amount, payable in six months after date. On July 6th, 1914, the last mentioned note being unpaid, the complainant took the note of Philip Oneto for $2,300, payable six months after date, which included the $600 note above mentioned and $1,700 then and there advanced in cash. This note was endorsed by Philip Oneto and his wife, Josephine Oneto.
The complainant commenced suit at law in the supreme court against Philip and Josephine on the last mentioned note, in which suit Josephine pleaded, admitting that she endorsed the note, but that she was the wife of Philip, and that the endorsement was made by her as surety, and that her separate estate received no benefit in consideration thereof. This, apparently, resulted in a dismissal of the suit against Josephine, and the case then proceeded to judgment against Philip, which judgment was entered on April 28th, 1923, for $2,084.34, and execution issued and a levy was made on the premises in question.
Shortly prior to the commencement of the suit at law, the complainant demanded payment of the said note, and shortly thereafter the two conveyances above mentioned, sought to be set aside, were made, which vested the title in the defendant Josephine. Josephine says that in 1910, when Pflug conveyed to Philip, the purchase-money was advanced by her, and that it was the intention of the parties that the title should be taken in her name; but Philip took the title in his own name. I have carefully examined the evidence in support of the wife's contention, and have come to the conclusion that $1,533.56, which was drawn by Josephine from *Page 77 
the Bank for Savings, in New York City, on April 14th, 1910, was actually used as part of the consideration. The purchase price is uncertain. It appears to have been $9,500 or $9,700, which was paid by giving a purchase-money mortgage for $6,700, and the payment of the balance ($2,800 or $3,000) in cash. There are other items which were drawn from the wife's bank accounts about the time of passing of title, which, if applied on account of the purchase price, would substantially equal the sum paid in cash. But I have been unable, with any certainty, to determine that these additional items were used for that purpose.
Josephine says that, upon the conveyance to her husband, she repeatedly asked him to put the deed in her name, but they could not find time to do so, and did not have the money to pay for the drawing of the deed, c. She also says that she knew that her husband had taken title in his own name within one year after the conveyance to him.
On June 15th, 1915, she signed a mortgage to the Hoboken Bank for Savings for $4,500, on which day the mortgage to Pflug was canceled of record. She also, on November 16th, 1915, executed another mortgage to Bernard Vizetti for $2,400. At either of these times she could readily have had the property placed in her name if she and her husband had desired to do so. But both defendants delayed doing this thing until a short time before the complainant demanded payment of the note and commenced suit; and then the transfers sought to be set aside were made.
The complainant says that the $1,700 was borrowed, among other things, to make alterations in the house and to pay some bills. He also says that both Mr. and Mrs. Oneto, before he took the $2,300 note, told him that Oneto was the owner of the property. This they both deny. The building, after this loan, was changed from three to four stories. Philip says that the only thing that was done to effect this change was to put in a stove. How a building could be changed from three to four stores by merely putting in a stove is beyond comprehension. Mrs. Oneto does not say that the building was not altered. *Page 78 
In this case, Josephine swears that the endorsement of her name on the $2,300 note is not her signature. It is quite apparent that in the suit at law, when she admitted in her answer that the endorsement on the $2,300 note was made by her, but that she was an accommodation endorser, and that her separate estate received no benefit, she took a position quite in conflict with that which she takes in the present case. She says, in this case, that the endorsement is not her signature, and that the property was bought in trust for her and should have been in her name from the beginning. I am satisfied, however, that the endorsement on the note is her signature, and that $1,700 in cash, loaned at the time of the making of the $2,300 note, or a great portion thereof, was used in the alteration of the building on the premises which Josephine now claims as owner.
Having admitted, in the suit at law, that the endorsement was her signature, if she had there stated what she now claims in this case, namely, that the said building was her property, and admitted that the $1,700, or a portion thereof, was used in the alteration of the premises, it is quite plain that she would be liable on the note, and judgment would have gone against her (Fisch v. Weinberg, 3 N.J. Adv. R. 274), in which case the complainant here might have levied on the premises and sold the interest of husband and wife to pay the debt. If what she now says be true, she practiced a fraud on the law court, and should not now be permitted to prevail here by changing her position.
Passing from the question of the effect of her conduct in the suit at law, in pleading in variance with her plea in this suit, and assuming that she did advance the purchase-money, when the $2,300 note was made, I am satisfied the defendants told the complainant that Philip was the owner of the property. I am also satisfied that she knew that her husband was heavily indebted, and that he owed the moneys to the complainant from the date of the making of the note, and that her husband was in a losing business. She also permitted the title to remain in his name for a period of twelve years, during eleven of which she knew that the title was in *Page 79 
her husband's name, and had ample opportunity, before the making of the note, to have the property transferred to her own name. Instead of doing this, she permitted the title to remain in her husband's name, stating to complainant that it was her husband's property, thus bolstering up his credit, and when he was about to be sued, seeks to protect herself by having it transferred to her in such manner as to defeat his creditors. In such situation she is estopped. Besson v. Eveland, 26 N.J. Eq. 468; City NationalBank v. Hamilton, 34 N.J. Eq. 158, 162; Mertens v. Schlemme,68 N.J. Eq. 549, 550; Cramer v. Cale, 72 N.J. Eq. 210, 215.
A decree will be advised for the complainant.