On October 11th, 1923, an informal agreement was drawn by the complainant Lepore, a real estate agent, for the sale of certain lands at 13 Oak street, Weehawken Heights, New Jersey, to the complainant Amato Rizzi, for $31,000. Five hundred dollars was paid to Hovagim as a deposit. This contract was signed by the defendants alone. There seems to have been an understanding that a formal agreement should be signed and such contract was drafted by the attorney of Rizzi, who engrafted new terms upon the informal agreement. The defendant Hovagim, attended to the matter for his wife, and when the formal contract was drawn, said he desired to submit it to his lawyer. He then discovered that it did not contain a clause conveying subject to the Pennsylvania tunnel easement, it appearing that the Pennsylvania tunnel was under the premises. The contract fell through. After the informal agreement was signed, and as part of the same transaction, the complainant Lepore drew up a commission agreement, signed by the defendant Hovagim alone, in which Hovagim agreed to pay to the complainants, Lepore and De Sena, $985, as commission.
Afterwards, Rizzi, Lepore and De Sena commenced a joint action, as plaintiffs, against Hovagim in the supreme court — Rizzi for the $500 deposit, and Lepore and De Sena for the $985 commission.
Hovagim filed his answer. The case was tried before his honor, Willard W. Cutler, and judgment was entered in favor of the plaintiff Rizzi for $500, with interest amounting to $39.50, and in favor of Lepore and De Sena for $985 and interest.
Being unable to collect on their judgment, complainants filed their bill in this cause, among other things, praying that "a decree may be made impressing the lien of the aforesaid judgment upon the premises described in the bill of complaint, and that said premises be sold to satisfy said lien." *Page 106 
The bill alleges that at the trial at law Hovagim testified under oath, in the presence of his wife, Haiganoosh, that he was the owner of said premises; and they aver the fact to be that Hovagim is the owner of the premises, but that the legal title thereto is in the name of the said Haiganoosh; and that the said Hovagim and Haiganoosh are estopped from asserting otherwise as against the complainants.
The answer filed by the defendants places in issue all the material facts of the bill except the entry of the judgment.
On the trial of the cause the complainants' solicitor said there was no claim for commission against Mrs. Pohan in the other case, or in this case, either. The vice-chancellor then remarked: "Then your whole case must rest upon the theory that Mrs. Pohan stood by and saw her husband contract to sell this property as his own, and signed a contract with you, whereby you lost your commission and the vendee lost his $500 — that is your whole case?" "Mr. Ockford — We go beyond that; we say it was his property." On these admissions, I take it that if the complainants failed to establish that the property in question was that of Hovagim, then they should fail as to the claim of Lepore and De Sena upon their judgment of $985 commissions.
The evidence in the case is overwhelming that this property was bought with the funds of Mrs. Pohan, and that it was her property and not that of her husband; and, therefore, the bill, as to the claim of Lepore and De Sena should be dismissed without prejudice.
The claim of the complainant Rizzi stands on a different footing. In the informal contract it says: "For the consideration of $500, as a deposit, I agree to sell my house, known as No. 13 Oak street, Weehawken Heights, New Jersey," c. This contract was signed by both defendants; but it was drawn with the idea that Hovagim was the owner. Lepore, the agent, when the contract was being signed, asked to have Haiganoosh sign it. Hovagim said, "You don't need my wife's signature; everything in it is perfectly all right; I am the owner of the property." Lepore said, "No, it is best to have your wife sign it, because under the law *Page 107 
the wife has to sign a contract of sale; so that is how his wife signed it." It is therefore plain that when Haiganoosh signed this contract to sell and her husband received the $500, she was aware of the misrepresentation as to ownership. Haiganoosh, in her testimony, said she signed the contract; that her husband asked her if she desired to sell, and she said, "Yes," and she told him to sell it; and then the contract was signed and the deposit check taken by her husband. Her husband showed her the check, and she said, "It was not enough of a deposit to sell that house," and he said, "We are going to get some more when we sell the house." Afterwards, when the contract fell through, she says she told her husband "to give the check back to him" (Rizzi).
The fifth paragraph of the bill alleges that Dr. Pohan, in the suit at law, testified under oath, in the presence of his wife, that he was the owner of the aforesaid premises. The defendants, in their answer, deny the fifth paragraph, and say that "if the doctor did so testify he answered without a proper understanding of the question; and further, because of the fact that he may have gotten into the habit of calling the property his own property, since it belonged to his wife * * * and since he has been collecting the rents for the same and generally taking care of it." I cannot attribute this view to the doctor's answer, because, on page 52 of the record at law, the defendants' counsel asked the doctor this question: "You still own that property of yours, don't you, doctor?" to which the doctor replied, "Yes, sir" — which indicates that his own counsel, at that time, did not know that the property was in the wife's name; and Mrs. Pohan did not testify that she did not hear her husband so testify, and she testified in that suit. It is quite evident that neither the complainants nor counsel upon either side knew who was the owner until after the judgment was entered.
Neither Dr. nor Mrs. Pohan deny that Dr. Pohan represented to the agent that the doctor was the owner of the property, and that, upon the faith of that, he received the $500 deposit. This money was received by the doctor with the knowledge and consent of his wife, for her use and benefit, *Page 108 
the same as the rents were collected and other moneys received by him upon her account. The defense interposed by her husband was her defense. If her husband prevailed, the judgment would operate as an estoppel in her favor. In view of the continued claim of the defendants, from the time of the making of the contract until the close of the trial of the suit at law in which the judgments were obtained, that the husband was the owner of the property, they are now estopped from setting up that it was the property of the wife for the purpose of defeating the judgment of Rizzi.Peregallo v. Oneto, 98 N.J. Eq. 74; affirmed, 99 N.J. Eq. 889;Lyon v. Stanford, 42 N.J. Eq. 411; Straus v. Loudenslager,96 N.J. Eq. 678; Clark Thread Co. v. William Clark Company,55 N.J. Eq. 658; S.C. on appeal, 56 N.J. Eq. 789, modified and reversed on another point; Ludy v. Larsen, 78 N.J. Eq. 237;Lake v. Weaver, 80 N.J. Eq. 395; affirmed, Ibid. 554.
In the defendants' brief counsel asserts that "the defendants were jointly liable for the return of this deposit, but Rizzi elected, for some reason, to sue but one of them, the husband, and obtained a judgment against the husband alone upon this joint liability, and it is my contention that he thereby made an election to pursue the husband alone, and that the cause of action which he had against the wife up to the time of the entry of that judgment disappeared and was merged in the judgment against the husband," citing Coles v. McKenna,80 N.J. Law 48. There is quite a difference between that case and the instant one. In the Coles Case the plaintiff brought his action against four defendants jointly, and entered final judgment against two of the defendants by default, and subsequently entered a final judgment, after verdict, against the other defendants. The court held "that where a judgment final is entered the original cause of action is merged in the judgment, and, in the case of a joint debt, whatever merges the cause of action as to one merges it as to all." Here, the complainants did not sue the defendants as joint debtors, but sued the husband alone on the representation aforesaid that he was the owner, *Page 109 
and, in effect, the wife had merely a dower right. The husband, at the trial, in answer to a question of his own counsel, said that he was still the owner. Had he told the truth, the plaintiffs might have either taken a nonsuit and begun another suit against the husband and wife, or they might have had a juror withdrawn and obtained leave to amend by bringing in the wife as a party; but, relying upon the representation of the husband, under oath, that he was the owner, they entered judgment against him. This was clearly a mistake that the plaintiffs at law (the complainants here) were led into by the untrue statement of the husband that he was the owner. In the Coles Case, supra, it was perfectly plain that the plaintiffs had full knowledge of the facts. Here, on the contrary, the complainants (plaintiffs at law) were ignorant of the facts, and were confirmed in their view that the ownership was in the husband, and, therefore, they could not be charged with having made an election.
In the case of Browning's Executor v. Rittenhouse,40 N.J. Law 230, 237, the defendant, a late sheriff, was sued for an escape. It appears that one John Lawyer was taken in execution on a ca. sa., and the sheriff, after the arrest, permitted the defendant to remain at home on a promise to go, the same day, with a surety, to the sheriff's office to give bail for his appearance. This was held to be an escape. But, being in actual custody, he gave a bond and inventory, under section 2 of the insolvent laws, and applied to the court for the benefit of said laws. The plaintiff, having knowledge of the escape, appeared in court as a creditor and opposed the debtor's discharge, and he was thereupon remanded and surrendered into the custody of the sheriff. The court held that an election was made and the action for escape waived. In the course of the opinion, Mr. Justice Scudder (at p. 237) cites the case of Dash v. Van Kleeck, 7Johns. 477. That case was quite similar to the Browning Case, excepting this, that the debtor, not knowing that there had been an escape wiithout the prison limits, opposed the application, in consequence of which the prisoner remained in custody. It was held that this was not a waiver of the *Page 110 
escape. The court said, "But Mr. Justice Kent says (at p. 500): `He undoubtedly might, with knowledge of the escape, have waived his remedy against the defendant and have elected to affirm his debtor in custody under the succeeding sheriff; but, without such knowledge, the law will not infer any determination of the party prejudicial to his rights.'" See, also, Titus v. Phillips,18 N.J. Eq. 541; Greenberg v. Palmieri, 71 N.J. Law 83.
I will advise a decree impressing a lien upon the premises in question for the sum of $500, with interest, in favor of the complainant Rizzi.